This is a petitory action. Plaintiff alleges that he is the true and lawful owner of a certain tract of land containing 13.75 acres situated in St. Helena Parish; that he acquired the said property from W.K. Gremillion on April 4, 1938, which act of acquisition was duly recorded in the conveyance records of the Parish of St. Helena; that defendant is in the actual physical possession of the property without any title whatsoever and refuses to deliver the possession of said property without any good or legal cause for such refusal.
In answer, defendant admits the ownership of the property to be in the plaintiff as alleged, and also admits that he is in the physical possession of the property, but denies the remainder of plaintiff's allegations. In further answer, he sets out *Page 254 
that in February, 1944, he rented the said property from plaintiff at the price of $10 per month and had paid the said monthly rental with the understanding that he was to construct a well to furnish the premises with water, the cost of which was to be credited to the rental of the property, which well he did drill at a cost of $83.
In further answer, he assumed the position of plaintiff in reconvention and averred that plaintiff had offered to sell unto him the said property by letter of March 29, for the price and sum of $700, and which offer was accepted on June 27, 1944, all of which were duly recorded in the conveyance records of the Parish of St. Helena. He further sets out that he called upon the plaintiff to comply with his contract to sell unto him the said property in pursuance to his contract, which demand the plaintiff refused, and that on July 21, 1944, he made a legal tender to plaintiff, with proper deed to be executed, and which tender and deed were refused by plaintiff. He further sets out that he is entitled to be recognized as the owner of the said property upon his depositing the sum of $700 in the Registry of the Court. His prayer is in consonance with his averments in his reconventional demand.
Upon these issues the case was tried, resulting in a judgment in favor of plaintiff and against the defendant recognizing plaintiff to be the true and lawful owner of the said property in dispute (fully described in the judgment), and, as such, entitled to the full possession thereof, ordering and condemning the defendant to deliver the possession thereof unto the plaintiff, and further disallowing the reconventional demand of defendant, all at the defendant's costs. Defendant has devolutively appealed.
Since defendant has admitted that plaintiff is the owner of the property and that he, defendant, is in the actual physical possession of the property, the only question presented to us is whether the defendant is entitled to the specific performance of his alleged contract to buy the property described in the petition.
The facts, as we gather them from the record, are that in February, 1944, the plaintiff rented the property in question to the defendant on a monthly rental basis of $10 per month. The property was in need of a water well and defendant agreed to provide the well, the cost thereof to be applied to the rent. On March 29, 1944, the plaintiff wrote defendant the following:
"Received your letter today, and I'm sure I don't know the condition of the place and if the well is going to cost that much to be fixed I will take that much off. As you know I didn't buy the place to profit on and I just want out what I have in it and I have that much there some place. So I won't take any less than $700.00 cash and you can have the pappers fixed up at the Court House and send them to me for me to sign, and there is all there is to it.
"Bill let me know soon as possible if you want it for I'm holding a man off till I here, he wants the place too.
"Hoping to hear from you real soon, as ever,"
Instead of complying with the above-quoted letter, it appears that defendant wrote to plaintiff inquiring about fire insurance on the house and the whereabouts of the policy.
On May 23, 1944, almost two months after the offer to sell, we find plaintiff writing to defendant as follows:
"You ask about the insurance. Bill as if you were still intending on buying the place. I can't figure out what you are waiting on if you really want to buy and if you are not I wish you would let me know just what is what so I will know the meaning of everything, if you are not going to buy than I owe you for the well and you will owe me some rent, or that is the way it looks to me, so in the very near future let me know just what you are going to do, and if you buy the place I'll have the insurance pappers sent to you they are in Jackson, and are carried by some one there in Jackson.
"Looking for an answer soon,
"Sincerely,"
It appears, in answer to that letter, the wife of defendant wrote the plaintiff, and in answer thereto we find plaintiff writing defendant of date May 30, 1944,
"Just received your wife ('s) letter.
"Well Bill you never give any reason to why you ask about the insurance so that is why I didn't tell you anything. So it has gone this far. Just hold everything till the middle of next month. Ruby (plaintiff's wife) is coming home and I'm leaving around the first of the mo. on a 14 day cross country. So just wait and she will see what we can do. And too I have forgotten *Page 255 
the name of the insurance as we left it at Jackson."
According to plaintiff's testimony, this letter was a withdrawal of his offer to sell.
On June 26, 1944, Mrs. Hanks, plaintiff's wife, accompanied by the brother of plaintiff, called upon defendant and informed him that the previous offer of $700 had been withdrawn and that plaintiff would sell defendant the property for $1,000. According to Mrs. Hanks and her brother-in-law, defendant was to inform her if he desired to pay this amount, on the following day. Defendant admits that Mrs. Hanks so informed him and that he agreed to see her on the following day. Rather than hold his appointment with Mrs. Hanks, defendant consulted counsel and wrote the following letter, dated June 27, 1944.
"Again I wish to advise you that I have accepted your offer to sell your place to me at the price of $700.00, as you offered in your letter of March 29, 1944. I also, wish to advise that I am ready to pass the sale at any time and am anxious to pay the Seven Hundred ($700.00) Dollars in Cash now or as soon as you wish to pass the sale.
"Kindly let me hear from you immediately when you expect to be home to sign the sale or whether you want the sale drawn and sent to you to be signed by you there."
Defendant then had the letter of plaintiff of date of March 29, 1944, and a carbon copy of his letter of date June 27, 1944, duly recorded in the Conveyance Records for the Parish of St. Helena.
On July 20, 1944, plaintiff, who was prior thereto and at that time a Sergeant of the Army Air Corps, visited Greensburg, St. Helena Parish, wherein the property is situated, and called upon the defendant with reference to their differences. According to his testimony, defendant had never accepted his offer to sell him the property in accordance with his, plaintiff's, letter of March 29, 1944, but had conditionally accepted the offer by letter of June 27, 1944, at which time he had receded from the offer and had so tentatively notified defendant in his letter of May 30, 1944, in that he was delegating his wife, Ruby, to carry on in his behalf. Upon his return to Greensburg on July 20, 1944, and at a meeting between the two litigants, he again informed defendant that his former offer of March 29, 1944, was of no longer standing and that if defendant desired the property, he could have the same for the price and consideration of $1,000. Defendant requested the remainder of the day to meet the offer and requested that he, plaintiff, meet him, defendant, at the court house on next morning. Rather than to pay plaintiff the amount of $1,000 for the property as agreed upon, defendant made him a legal tender of $700, which he refused.
[1] Without going into any further detail as to what each of the litigants and their wives testified, it appears to us that the record bears out the statement that the offer as contained in the letter of March 29, 1944, was not unconditionally accepted by the defendant prior to June 27, 1944, and thus not in accordance with the said offer. The record justifies the conclusion, as presumably reached by the trial judge, that since the offer had been withdrawn by plaintiff in accordance with his letter of May 30, 1944, the fact of which was also delegated to Mrs. Hanks to so inform defendant and which fact she did, it was then too late for defendant to conditionally accept the offer of March 29, 1944, on June 27, 1944.
The underlying principle of a contract is the meeting of the minds. This principle is clearly enunciated in Civil Code, Article 1798 wherein it is stated: "As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."
Civil Code, Article 1802 provides that: "He is bound by his proposition, and the signification of his dissent will be of no avail, if the proposition be made in terms, which evince a design to give the other party the right of concluding the contract by his assent; and if that assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow."
[2-4] Applying this principle of law to the facts of this case, it is readily seen that the meeting of the minds between the plaintiff and defendant never did unite. On March 29, 1944, plaintiff offered to sell the property to defendant for $700 cash, the deed to be prepared and to be sent to him for his signature as "soon as possible", which is synonymous to "at once". Yet, *Page 256 
the facts disclose that the defendant waited until June 27, 1944, to accept the offer, and then qualified his acceptance in that he failed to have the deed drawn and forwarded to the plaintiff for his signature as detailed in the offer of March 29, 1944. It is fundamental that an offer to sell must be accepted as made to constitute a contract between the parties. It appears to us that the acceptance by his letter of June 26, 1944, the recordation of the letter of March 29, 1944, and the legal tender of July 21, 1944, were all after thoughts of the defendant. It further appears to us that all of defendant's actions up to July 21, 1944, were more in the nature of delay or playing for time, because before that time he had not the purchase price to pay for the property.
For these reasons assigned, the judgment appealed from is affirmed.